[No. 13328.  Department Two. — February 1, 1890.]

GEORGE D. NIDEVER, APPELLANT, *v.* ROBERT
AYERS, RESPONDENT.

| 83 | 39| |
|---|---|
| 108 | 676 |
| 83 | 39 |
| 109 | 38 |
| 83 | 39 |
| 128 | 364 |

QUIETING TITLE — EQUITABLE TITLE — TRUST. — An action to quiet title
will not lie as such, where it appears that the legal title is in the defend-
ant, though the complainant may be entitled to a conveyance from the
defendant of the legal title upon a complaint seeking such conveyance
from him as trustee.

ENFORCEMENT OF TRUST — BONA FIDE PURCHASER — NOTICE OF RESULT-
ING TRUST — UNRECORDED DECREE OF DISTRIBUTION — QUITCLAIM
DEED. — A *bona fide* purchaser from the holder of the legal title, without
notice of a secret or resulting trust arising from the payment of the pur-
chase-money by another person, when conveyance was originally made
to his grantor, is protected against the enforcement of such trust, and is
not affected with constructive notice of an unrecorded decree of distri-
bution made while his grantor was administrator of the estate of the
deceased owner of the equity, distributing such equity to the heirs of
the decedent, under an inventory made by such administrator declaring
that decedent was the owner of the equitable estate; nor is such pur-
chaser put on inquiry by the fact that his conveyance from the holder of
the legal title was in effect a quitclaim deed, granting only his right,
title, and interest in the premises.

APPEAL from a judgment of the Superior Court of
Ventura County.

The facts are stated in the opinion.

*Joseph H. Skirm*, and *Thomas McNulta*, for Appellant.

*McKeeby & Smith*, and *Blackstock & Shepherd*, for Re-
spondent.

FOOTE, C. — The complaint in this case, in one aspect,
might be called a complaint in an action to quiet title.
Upon that theory, the evidence showing that the legal
title was in the defendant, no right of recovery would
accrue to the plaintiff.  (*Von Drachenfels* v. *Doolittle*, 77
Cal. 205.)  But possibly it might be construed as a
complaint for a conveyance of the legal title, and inas-
much as we have reached the conclusion that the judg-
ment in favor of the defendant should be affirmed, we
have examined the merits of the case.

The complaint alleges that one George Nidever, the father of the plaintiff, was, at the date of his death, the owner of and seised of an equitable estate in certain lands; that the legal title thereof was vested in John Nidever at the time of the bringing of this action, also deceased, and that the last-mentioned person held such lands as the trustee of his son George, above mentioned, the father of the plaintiff, George D. Nidever.

The record shows that, upon the death of George Nidever, who died intestate, his father, John Nidever, became the administrator of his estate, being duly appointed as such by the probate court of the proper county. While acting in that capacity, and, as alleged, "holding the legal title to and being in possession of said equitable estate," the administrator filed an inventory, in which, among other things, he declared the land in dispute equitably to belong to his son's estate. He also filed in that court a verified petition, asking that the estate of his decedent be distributed, in which the same declaration is made as to the title of the land involved here.

An order of distribution was made, and under it the plaintiff, as the only child surviving his father, George Nidever, had set apart to him an undivided one half of the land distributed, as above specified in the inventory and petition, the other half being set apart to his mother, the widow of George Nidever, which last is not included in this action.

Several years before this order or decree of distribution was recorded, John Nidever made and delivered a deed of the land, to which he thus held the legal title, to George S. Gilbert and W. S. Chaffee, and through that deed and mesne conveyances the defendant deraigned his title from John Nidever.

The deed which the latter executed was duly recorded long before the decree above mentioned. Both parties to the action claim from the same source of title, under a patentee from the United States government.

According to the admissions of the plaintiff, by his counsel, on the trial, the defendant never had any actual knowledge of any payment made by the decedent, George Nidever, upon these lands, or any actual notice of any trust relation existing between the father, John Nidever, and his son George. The whole contention is, that the probate court proceedings, and the recitals of the deed which John Nidever executed, were constructive notice to the defendant of the outstanding equitable title in George Nidever and his successors, which equitable interest arose from the payment of the purchase price of the land by George Nidever, and his causing the legal title to be vested in his father, John Nidever, Upon this state of facts the motion of the defendant for a nonsuit was granted, and from the judgment thereupon entered this appeal is prosecuted.

Was the decree of distribution, unrecorded at the date of the conveyance by John Nidever, the holder of record of the legal title, constructive notice to the defendant of the equitable title vested in George Nidever by his paying the purchase-money for the land, and having the legal title thereto vested of record in his father, John Nidever?

The appellate court of this state said, in a case where a similar question arose, as to one claiming, as the defendant does here, to be a *bona fide* purchaser without notice: —

"The intervenors claim that by virtue of the homestead proceedings in the Alhoff estate they became tenants in common with their mother in the ownership of the premises; that when Chalmers acquired the title from the United States government he acquired it for them, and hence held it in trust for them; and that the possession by their father, and the setting apart by the probate court, imparted to the plaintiff sufficient notice to put it upon inquiry, and that it is not an encumbrancer in good faith without notice. We do not think the home-

stead proceedings in any manner affect the mortgage. Those proceedings operated only upon whatever right the intestate had at the time of his death." (*Stockton B. & L. A.* v. *Chalmers*, 65 Cal. 95.)

We perceive no reason why the rule thus laid down should not apply as well to a decree of final distribution of land as to a decree setting apart a homestead.

Should the recitals in the deed made by John Nidever, through which the defendant claims, be held sufficient to put him upon inquiry as to the existence of the outstanding equity? ·

An examination of the deed upon record, if made, would have shown that John Nidever was invested with the legal title to the land. The language of the granting clause in the recital in the deed from John Nidever, through which defendant claims, relied on to defeat the defendant's claim as a *bona fide* purchaser without notice, is: " That the grantor has granted, bargained, and sold and confirmed, and by these presents does hereby grant, bargain, sell, convey, and confirm, all the right, title, and interest of the party of the first part in and to the premises described."

Conceding that this constituted the instrument a quitclaim deed, does it necessarily follow from this circumstance alone that the defendant must be held to have been put upon inquiry as to the secret equity?

The appellant court of this state, in *Graff* v. *Middleton*, 43 Cal. 341, held that " in this state, from the earliest times, quitclaim deeds have been in every-day use for the purpose of transferring title to land, and have been considered as effectual for that purpose as deeds of bargain and sale. It is true they transfer only such interest as the seller then has, and do not purport to convey the property in fee-simple absolute, so as to pass an after-acquired title, but to the extent the seller has an interest they divest him of it, and vest it in the purchaser.

"We consider, therefore, that a quitclaim deed received in good faith, and for a valuable consideration, which is first recorded, will prevail over a deed of older execution which is subsequently recorded."

In the present case there is nothing, unless the mere recitals of the deed can be so treated, to show any want of good faith, and it is not denied that a valuable consideration was paid for the land, and the deed recorded before the recordation of the decree of the probate court.

With reference to a like question, the supreme court of Mississippi, speaking through Mr. Justice Campbell, said:—

"We conclude that there is no *authority* for the proposition that a quitclaim deed in the chain of title deprives him who claims under it of the character of a *bona fide* purchaser. There are *dicta* and suggestions and inferences to that effect. But we deny and repudiate the proposition as unsound and insupportable on authority, principle, or policy. . . . . We fully approve and adopt the language of Rawle on Covenants for Title, 4th ed., 35: 'In the absence of local usage, it would seem that no presumption of notice can properly arise, either from the absence or presence of unlimited covenants.' Such a doctrine, as that a quitclaim conveyance in the chain of title affects the party who claims under it with notice of infirmities in the title, would be as impolitic as it is unsupported by reason or authority." (*Chapman* v. *Sims*, 53 Miss. 168, 169.)

It follows, therefore, that the contention of the appellant, that the defendant was a purchaser with notice of the equitable title of George Nidever and his successors, is without force, and we advise that the judgment of nonsuit be affirmed.

HAYNE, C., and BELCHER, C. C., concurred.

The COURT.—For the reasons given in the foregoing opinion, the judgment of nonsuit is affirmed.