[Civ. No. 29051.   Second Dist., Div. Four.   Jan. 6, 1967.]

TOSHIYE EHRET et al., Plaintiffs and Appellants, v. TSUTAYO NAKAO ICHIOKA, Defendant and Respondent.

Shizuye Lewis, in pro. per., for Plaintiffs and Appellants.

Tetsujiro Nakamura and Wayne M. Collins for Defendant and Respondent.

KINGSLEY, J.—Plaintiffs Toshiye Ehret, Mia Ichioka Yamaoka, Shizuye Lewis and Futaba Ichioka are the issue of a marriage between Masako Ichioka and Toshio Ichioka, both now deceased. Plaintiff Mia Ichioka Yamaoka also appears as

the administratrix of the estate of Masako Ichioka, deceased. Defendant Tsutayo Nakao Ichioka is the second wife of Toshio Ichioka. The action, described with more particularity below, is based on the claim that Toshio held certain property in trust for plaintiffs Toshiye, Mia, Shizuye and Futaba, and that he had violated that trust by transfers *inter vivos* and testamentary to Tsutayo, and that the latter is liable to account to them for this property and its proceeds. After sundry proceedings in the trial court, defendant's demurrer to the fourth amended complaint was sustained without leave to amend, judgment of dismissal was duly entered and the present appeal was taken.

## I

Originally, the action was instituted for the plaintiff children by the law firm of Burton & Gauldin, appearing by Alexander D. Thomson, Esq. Subsequently, Shizuye was appointed as guardian *ad litem* for her incompetent sibling Futaba and, beginning with the first amended complaint, she appears in that capacity as well as individually. In that first amended complaint, also, Mia appears for the first time as administratrix of Masako's estate as well as in her individual capacity.

Shortly before the ultimate, fourth amended, complaint was filed, there was filed in the court below a document executed by plaintiff Shizuye only (together with consents by Thomson on behalf of Burton & Gauldin, and by Mr. Mostman, reading as follows: "Plaintiff [*sic*] hereby substitutes Paul Ian Mostman as his [*sic*] attorney of record in place of BURTON & GAULDIN." Thereafter, there was filed a document, executed by Shizuye only, "as one of the plaintiffs above named," (together with consents by Messrs. Mostman and Brooks) reciting the appointment by "plaintiffs" of Arthur A. Brooks, Jr., as "co-counsel" for "plaintiffs." Finally, there was filed a third document, again executed by Shizuye only (together with consents by Messrs. Mostman and Brooks), reciting that "Plaintiffs hereby substitute SHIZUYE LEWIS, im [*sic*] propria personum [*sic*] of record, in place of PAUL IAN MOSTMAN and ARTHUR A. BROOKS, JR." The notice of appeal is executed, purportedly on behalf of "plaintiffs" by Shizuye Lewis "Im Propria Personum." [*sic*]

Supporting her motion by evidence that Shizuye is not, and never has been, a member of the California Bar, defendant has moved to dismiss the appeal as improperly taken. We deny the motion.

■  We know of no rule that requires the employment, or the discharge, of an attorney to bear the personal signature of each client, nor any rule that the employment or discharge may not be made by an agent.[1] It follows that, if properly authorized by her coplaintiffs,[2] Shizuye was empowered to make the several changes above listed. It is true that she could not act as an attorney for her siblings, but the only act with which we are here concerned is the execution of the notice of appeal.  ■  Whether or not she or her coplaintiffs were still represented by counsel at that moment, the California Rules of Court (rule 1(a)) permit the notice of appeal to be signed by the party. Again, remembering that such notices are to be liberally construed, we can see no reason why Shizuye could not, as agent, sign the notice on behalf of the other plaintiffs; the notice before us purports to have been signed in exactly that capacity. We regard it as valid and effective.[3]

## II

■  We note that the caption of the fourth amended complaint purports to list, as one of the plaintiffs, an heir-at-law of Masako designated as ''Jane Roe.'' The complaint alleges: ''The true name and address of said JANE ROE is presently unknown to the other plaintiffs herein who therefore name her under her fictitious name; when the true name is ascertained, plaintiffs herein will ask leave to amend their Complaint to specifically set forth the true name.''

From this allegation it is clear that ''Jane Roe'' has not authorized the filing of this complaint on her behalf. Neither is there anything to indicate that she authorized anyone to prosecute an appeal from the judgment which has been entered. She cannot be regarded as an appellant here.

---

[1] The rules which contemplate filing and service of written substitutions are primarily for the protection of the other parties and the courts, who may regard the attorney's powers as continuing until the ostensible capacity has been refuted. But we are not here concerned · with any reliance by anyone on acts done by the earlier counsel of record.

[2] In her opposition to the motion to dismiss, Shizuye has filed with us a document executed by her coplaintiffs which we regard as adequate proof either of her original authority or of ratification.

[3] It is true that the briefs on appeal are presented by Shizuye and that, since she is not an attorney, she may not properly file briefs on behalf of her coappellants. But the failure of one appellant to file a brief merely authorizes, and does not compel, this court to dismiss as to him. The brief filed by Shizuye raises all the issues that could have been raised by her coappellants. On our own motion, we treat it as being adopted by them.

We need not decide whether "Jane Roe," as an heir of Masako, is an indispensable or a conditionally necessary party, nor what steps should be taken in the trial court to bring about her joinder in some proper way. (See Code Civ. Proc., §§ 382, 389.) It is sufficient here to deal with the question of whether the action should have been dismissed as against the plaintiffs who have joined voluntarily in the action and in this appeal.

Neither is it necessary to pass upon defendant's contention that the administratrix of Masako's estate was added as a party plaintiff after the statute of limitations had run. The case in this court, on the complaint before us, involves only the rights of the heirs as beneficiaries of a trust and, as appears below, such claims may be asserted directly by the heirs themselves.

### III

The fourth amended complaint, although no model of pleading, seems to us adequately to allege (at least as against a general demurrer) that, under the law of Japan, the marriage of Masako and Toshio resulted in vesting in Toshio certain rights in Masako's theretofore separate property, that Toshio had the power of management of that property during Masako's lifetime and thereafter until his own death, but that those powers were powers in trust (referred to in the briefs as a "Yoshi" trust) for the benefit of Masako while she lived and for the benefit of the issue of the Masako-Toshio marriage thereafter, the trust terminating and the rights of the children-beneficiaries vesting on their father's death. The complaint then alleges the existence of property of Masako at the time of her marriage, its management and investment (resulting in a substantial increase in value) by Toshio, the death of Masako and Toshio, and the diversion by Toshio of the trust estate. If these allegations are true, it is obvious that the complaint states a good cause of action for breach of trust.

In an action for constructive trust one must plead facts constituting the cause of action, such as fraud, breach of fiduciary duty, etc., and specifically identifiable property. (See *Burke* v. *Maguire* (1908) 154 Cal. 456, 469 [98 P. 21].)

In the instant case, all of these necessary elements were adequately pled.

Defendant contends that there are no facts tracing the specific trust property or alleging that the property transferred to defendant was actually property from Masako's estate. However, the complaint clearly alleges and lists 11 items of specific property that were purchased with the rents, issues, and profits of the original trust property, and so de-

fendant's contention is without merit. Most of the property was specifically identified.

Further, the second element of the cause of action for a constructive trust (breach of fiduciary duty) was adequately pled. Plaintiffs pled the breach of duty of an actual trust by the trustee, Toshio, in which property was wrongfully transferred to defendant Tsutayo. A cause of action in *constructive* trust may be based on a breach of fiduciary duty by a trustee of an express trust. (*Truesdail* v. *Lewis* (1941) 45 Cal.App.2d 718 [115 P.2d 218].)

Defendant argues that plaintiffs did not allege that defendant "gained" a thing by fraud, accident, mistake, etc., as required by Civil Code section 2224. There is no magic in the use of the word "gained." The same meaning can be derived from the words that were actually used in the complaint in the case at bench.

Defendant alleges that the complaint did not state a cause of action because it failed to allege that respondent was not a bona fide purchaser for value and that it failed to allege that she took with notice of the plaintiffs' rights, and that such allegations are necessary. (*Ferguson* v. *Ferguson* (1943) 58 Cal.App.2d 811, 814 [137 P.2d 735].) Without here repeating the allegations of the complaint, paragraph XIV of the first cause of action contains allegations that the property was transferred without good faith and without consideration, and paragraph III of the second cause of action alleges that defendant knew of the existence of trust property.

Defendant correctly alleges that love and affection is a good consideration for certain transfers from husband to wife. But defendant's claim that "love and affection" is sufficient to make the defendant a bona fide purchaser must fail. It is true that one who purchases trust property for value from the holder of legal title without notice of the trust is protected against the enforcement of the trust. (*Murphy* v. *Clayton* (1896) 113 Cal. 153 [45 P. 267]; *Nidever* v. *Ayers* (1890) 83 Cal. 39 [23 P. 192].) However, simply because love and affection is good consideration between husband and wife for purposes of certain conveyances, it does not follow that the wife becomes a bona fide purchaser for *value*. In *Hanscome-James Winship* v. *Ainger* (1925) 71 Cal.App. 735 [236 P. 325], a fraudulent conveyance case, it was held that love and affection, while good, is not a valuable consideration; and that case also held that a transfer by an insolvent husband to

a wife for love and affection was presumed fraudulent as to the husband's creditors.

## IV

Whether or not the trust alleged arose is, of course, under the pleading before us, a matter of Japanese law. Since it regarded the case as controlled by the statute of limitations, the trial court never reached the question of whether or not that law was correctly stated in the complaint. Plaintiffs have not provided us with data sufficient to enable us to resolve that issue, although it is not without significance that the brief for defendant does not cite any authority against the existence of a rule of law such as plaintiffs allege. ▮ While we may take judicial notice of foreign law, we are not required to do so unless the parties so request and provide adequate data for our inquiry. (Evid. Code, § 459.) ▮ In any event, the existence of the foreign law as alleged is (though a matter of judicial notice) still a question more efficiently determined in the first instance by a trial court after the necessary investigation, and reflected in proper findings. (*Estate of Eng* (1964) 228 Cal.App.2d 160, 167 [39 Cal. Rptr. 254]; *Estate of Feierman* (1962) 202 Cal.App.2d 552, 563 [20 Cal.Rptr. 883].) On the remand, the trial court should first determine the questions of foreign law, since trial of the other issues will be necessary only if the law of Japan, in fact, creates a trust enforceable by these plaintiffs against this defendant.

## V

▮ The trial court regarded the cause of action as barred by the statute of limitations. Insofar as the California statute is concerned, the court was in error. The trust as alleged was not broken until Toshio's death, since until that time there was no repudiation of his duties. The statute of limitations began to run on Toshio's death, and not before. (*Herrick* v. *Everhart* (1966) 241 Cal.App.2d 195 [50 Cal.Rptr. 454].) That event is alleged to have occurred in 1960; the action was filed in 1962, well within the statutory period.

▮ Whether or not certain provisions of Japanese law barred the enforcement of the trust is, like the issue of the existence of a Yoshi trust at all, a matter for determination by the trial court as part of its investigation of Japanese law. It is not a question before us on this appeal.

Since, insofar as our local law is concerned, the action was

timely commenced, it is immaterial what "excuses" plaintiffs allege for not filing their action earlier.

## VI

Defendant argues that plaintiffs are not the real parties in interest, on the ground that, in the absence of special circumstances, an heir cannot maintain an action for recovery against the personal estate of the decedent. (*Holland* v. *McCarthy* (1918) 177 Cal. 507 [171 P. 421].) However, as herein alleged, plaintiffs' rights do not arise as heirs of Toshio but as beneficiaries under a trust. ▉ And, where the trustee acts in breach of trust, as by transferring property to a third person without consideration, the beneficiary's right of action against either the trustee or transferee is well established. Further, if the trustee fails or refuses to act, the beneficiary can sue the third party. (*Woman's etc. Club* v. *Anglo Cal. Nat. Bank* (1949) 90 Cal.App.2d 850 [204 P.2d 411].)

As we have said above, whether or not the law of Japan did, in fact, create a trust enforceable by the issue of the marriage in their own right is an issue not resolved by the trial court and not before us on this appeal.

Also, not before us on this appeal is the truth or falsity of the allegation that Masako did, in fact, bring into her marriage with Toshio the property which, it is claimed, was the original trust res.

The purported appeal by "Jane Roe" is dismissed; as to the other appellants the motion to dismiss the appeal is denied; the judgment is reversed.

Files, P. J., and Jefferson, J., concurred.

A petition for a rehearing was denied January 31, 1967, and the opinion and judgment were modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied March 3, 1967.